Cammille SORRELL, Plaintiff,

v.

ILLINOIS STUDENT ASSISTANCE
COMMISSION, Defendant.

No. 03–3257.

United States District Court,
C.D. Illinois,
Springfield Division.

April 22, 2004.

287 F.Supp.2d at 904–05; *Casey,* 32 F.3d at    1099.

Cammille Sorrell, Springfield, IL, pro se.

Stephanie L. Shallenberger, Asst. Attorney General, Springfield, IL, for Defendant.

## OPINION

RICHARD MILLS, District Judge.

The Plaintiff brings this action against a State Agency.

The State of Illinois has not consented to be sued in federal court pursuant to the claims brought by the Plaintiff.

Nor has Congress abrogated the State's sovereign immunity.

Therefore, this case must be DISMISSED.

## I.  BACKGROUND

Cammille Sorrell alleges that she has been employed as a Legal Investigator at the Illinois Environmental Protection Agency since January 16, 2001.  She owes an educational student loan totaling $14,200 to the Illinois Student Assistance Commission ("Defendant" or "ISAC").  Sorrell alleges that the Defendant is a financial aid center which distributes educational grants, scholarships, loans, and tuition support within the State of Illinois, and also functions as a collection agency for payments of its student loans and reports such actions to the major consumer credit reporting agencies.

Sorrell claims that on July 13, 1998, the United States Bankruptcy Court for the Western District of Texas entered an agreed order requiring her to make monthly payments of $100 to the Defendant for her student loan debt.  The payments were to commence on November 1, 1998, and continue monthly until the loan was paid in full.  The order provided that no interest would accrue as long as the payments were timely made, and that Sorrell was no more than 60 days delinquent on any one payment.

Sorrell says that on November 19, 2002, she was informed by the Comptroller of the State of Illinois that $285.23 had been withheld from her paycheck.  The reason for this action was that ISAC had advised the Comptroller that she was in default in paying her student loan.  Sorrell was not notified before the action was taken.  After she contacted the Illinois EPA Payroll Department, the Defendant ISAC, and the Comptroller, Sorrell alleges that it was determined that the wage garnishment was in error and that she would be issued a check for the garnished wages within one week.

Sorrell states that she received a letter in August 2003 from Discover Personal Loans notifying her that her application for a personal loan had been rejected.  The reasons given for the rejection were collection activity on her credit reports and past and/or present delinquent credit obligations.  Sorrell says that on October 7, 2003, she sent ISAC a letter requesting that it revise the information it was reporting to the various consumer credit reporting agencies.  She claims that her credit reports were erroneously indicating that a $900 balance was past due and her account was 120 days past due.  Sorrell asserts that ISAC responded with a letter dated October 10, 2003, wherein it stated that it had reported erroneous account information to the three major credit reporting agencies, and it would continue to report erroneous information until its billing statements could be fixed.

Sorrell next alleges that she received from Discover Platinum a credit card application rejection letter dated October 17, 2003.  A primary reason given for the rejection was collection activity on her credit report.  She claims that she received from People's Bank of Connecticut

a letter dated October 29, 2003, informing her that her application for a credit card had been rejected. A primary reason given for the rejection was that her accounts were 90 days past due on her credit report. She states that she received from U.S. Bank a letter dated October 30, 2003, wherein she was informed that her application for a credit card had been rejected. The primary reasons given for the rejection were delinquency in account payments and collection activity on her credit report.

Sorrell relates that on October 30, 2003, she sent Defendant ISAC a notice of her intent to pursue legal action because of ISAC's failure to revise its credit reporting procedures and credit information pertaining to her account and due to its illegal garnishment of her wages. Sorrell subsequently asserted this pro se action pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). She purports to allege three claims pursuant to the FDCPA and three claims pursuant to the FCRA.

## II. ANALYSIS

### A. The Legal Standard

In ruling on a motion to dismiss, the Court must accept all well-pleaded allegations of the complaint as true. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1104 (7th Cir.1984). Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. *Car Carriers,* 745 F.2d at 1106. Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief." *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### B. The Parties' Allegations

Defendant ISAC has proffered several reasons as to why it argues the Plaintiff's complaint should be dismissed. First, the Defendant contends that Congress has not unequivocally expressed its intent to abrogate the State's sovereign immunity under the FDCPA or the FCRA. Because the Defendant is a State agency which is regulated by State statute, therefore, the Plaintiff's claims are against the State of Illinois and are barred by the Eleventh Amendment. Second, the Defendant asserts that no private cause of action exists under the FCRA and, finally, the Defendant contends that any abrogations of sovereign immunity contained in the statutes at issue are not valid exercises of congressional power pursuant to section 5 of the Fourteenth Amendment.

In her response brief, the Plaintiff contends that 11 U.S.C. § 106 of the Federal Bankruptcy Code preempts the sovereign immunity of the State granted by the Eleventh Amendment. Specifically, she asserts that, pursuant to section 106, a governmental unit that has filed proof of a claim in a bankruptcy case is deemed to have waived sovereign immunity with respect to a claim against the governmental unit that is property of the estate and that arose out of the bankruptcy transaction. Sorrell also alleges that Congress has unequivocally expressed its intent to abrogate the State's sovereign immunity under the FDCPA and the FCRA. She next argues that common law provides extensive precedent for a private right of action against a State agency for illegal debt collection and debt reporting practices and, finally, Sorrell argues that the FDCPA and the FCRA are the most ap-

propriate enforcement vehicles to address ISAC's illegal debt collection and debt reporting practices.

In its reply brief, the Defendant contends that the Bankruptcy Code does not abrogate the State's sovereign immunity as to claims brought pursuant to non-bankruptcy law. Accordingly, the Plaintiff's FDCPA and FCRA claims against the State are barred by the Eleventh Amendment.

### C. Sovereign Immunity

The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been interpreted to provide immunity to unconsenting States "from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974).

However, a State's immunity from suit is not absolute. "Congress may abrogate the State's Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." "[T]he Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." *Nanda v. Board of Trustees of the University of Illinois*, 303 F.3d 817, 822–23 (7th Cir.2002) (internal citations and quotations omitted).

### D. Plaintiff's FDCPA Claims

The Defendant contends there is no indication that Congress sought to waive the Eleventh Amendment immunity of States as to claims pursuant to the FDCPA. The Defendant notes that the FDCPA refers to "consumers" and "debt collector[s]." A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). There is a longstanding presumption that a sovereign is not included within the term "person." "The presumption is particularly applicable where it is claimed that Congress has subjected the States to liability to which they had not been subject before." *United States ex rel. Chandler v. Cook County, Ill.*, 277 F.3d 969, 980 (7th Cir.2002) (internal quotations omitted). ISAC argues that, because Congress did not intend for a "debt collector" to include a sovereign State, it is clear that the State's sovereign immunity pursuant to the FDCPA has not been unequivocally abrogated. Moreover, the Defendant asserts that there is no clear declaration by the State of Illinois of its consent to be sued in federal court under the FDCPA. Accordingly, the Defendant contends that the Plaintiff's FDCPA claims should be dismissed.

It appears that there is only one circuit court of appeals that has addressed whether FDCPA claims against the State are barred by the Eleventh Amendment. In an unpublished opinion, the Ninth Circuit held that a plaintiff's FDCPA claims were barred by the Eleventh Amendment. *See Codar, Inc. v. State of Arizona*, 168 F.3d 498, 1999 WL 50904 (9th Cir.1999). That court determined that Arizona had not waived its immunity, and the FDCPA did not abrogate the State's immunity. *Id.* The Plaintiff cites several bankruptcy court cases in support of the proposition that when a State files proof of a claim in a

bankruptcy case, it is deemed to have waived sovereign immunity with respect to a claim against it that is property of the estate and that arose out of the bankruptcy transaction. As the Defendant notes, however, the applicable statute relied on by those courts demonstrates the intent of Congress to abrogate the State's sovereign immunity only as to claims brought pursuant to certain sections of the Bankruptcy Code. *See* 11 U.S.C. § 106(a). Moreover, the Seventh Circuit has held that Congress "lacked authority under Article I of the Constitution to abrogate state sovereign immunity by enacting Section 106(a) of the Bankruptcy Code." *Nelson v. La Crosse County District Attorney,* 301 F.3d 820, 838 (7th Cir.2002).

Because the State of Illinois has not waived its sovereign immunity, and Congress has not unequivocally expressed an intent to abrogate the State's immunity, this Court holds as a matter of law that the Plaintiff's claims pursuant to the FDCPA are barred by the Eleventh Amendment. Accordingly, the Court will ALLOW the Defendant's motion to dismiss as to those claims.

### E. Plaintiff's FCRA Claims

Defendant ISAC asserts that the Plaintiff's FCRA claims are also barred by the Eleventh Amendment. The Defendant notes that the FCRA provides, "[T]he Commission may commence a civil action to recover a civil penalty in a district court of the United States against any person that violates this subchapter." 15 U.S.C. § 1681s(a)(2)(A). For the purpose of that subchapter, the word "person" "means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681(b). The Defendant argues that, even if the

definition of "person" arguably could encompass a State pursuant to this statute, such an inference is not an unequivocal expression of Congress's intent to abrogate the State's sovereign immunity.

In an unreported case, the Southern District of New York held that because Congress enacted the FCRA pursuant to its Commerce Clause power—instead of its power under section 5 of the Fourteenth Amendment—it lacked the authority to abrogate a State's sovereign immunity through that statute. *See O'Diah v. New York City,* 2002 WL 1941179, at *6 (S.D.N.Y.2002) (citing *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 59, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). *See also Richmond v. TRW Info Services Div.,* 1997 WL 1037886, at *4 (S.D.Cal.1997) (dismissing the plaintiff's FCRA claims because there was no indication that California waived or Congress abrogated the State's immunity).

This Court hereby follows the same rationale and holds as a matter of law that Plaintiff Sorrell's claims pursuant to the FCRA are barred by the Eleventh Amendment.[1] Accordingly, the Court ALLOWS Defendant ISAC's motion to dismiss as to all of the Plaintiff's claims pursuant to that statute.

*Ergo,* the Defendant's motion to dismiss the Plaintiff's complaint is ALLOWED.

---

1. Having concluded that all of the Plaintiff's claims are barred by the Eleventh Amend-

ment, the Court need not address the Defendant's alternative bases for dismissal.