**In re Francis O'BRIEN, Debtor.**

**Francis O'BRIEN, Plaintiff,**

**v.**

**STATE OF VERMONT, AGENCY OF NATURAL RESOURCES, Defendant.**

Bankruptcy No. 95–10946 FGC.
Adversary No. 96–1024.

United States Bankruptcy Court, D. Vermont.

Feb. 2, 1998.

R. Rice, Cohen & Rice, Rutland, VT, for Debtor.

C. Shea, Asst. U.S. Atty., Burlington, VT, for Intervenor.

R. Shems, Asst. Atty. General, Office of Atty. General, Montpelier, VT, for State of Vermont.

## MEMORANDUM OF DECISION ON STATE SOVEREIGN IMMUNITY

FRANCIS G. CONRAD, Bankruptcy Judge.

Vermont moves [1] to dismiss Debtor's preference action on grounds of sovereign immunity under the Eleventh Amendment to the U.S. Constitution. Determination of this motion forces us to join in the burgeoning national debate over how the Bankruptcy Code

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. § 157(b)(2)(A). This Memorandum of Decision constitutes findings of fact and conclu-

is to be implemented in our federal system of coexisting state and federal sovereigns.

That debate, which flared up after the Supreme Court's recent decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), has centered on the constitutionality of 11 U.S.C. § 106.[2] Section 106 expressly abrogates sovereign immunity for both state and federal governments with respect to enumerated sections of the Bankruptcy Code. The enumerated sections include § 547, the basis for Debtor's preference action. Section 106 permits a court of appropriate jurisdiction to determine and enforce certain kinds of bankruptcy claims for monetary and injunctive relief that governmental units, debtors and estates have against each other.

We hold that § 106 of the Bankruptcy Code is constitutional, because it incorporates principles of federalism and comity that acknowledge and accommodate Vermont's claim of sovereign immunity. More particularly, faithful adherence to the plain language of § 106 itself permits the matters at issue here to be determined in the first instance in the courts of the State of Vermont. Accordingly, Vermont's motion will be granted.

### FACTS

In 1987, Debtor bought a large parcel of land that contained a dam on Youngs Brook. In October 1993, Vermont determined that the dam was in imminent danger of collapsing, representing a hazard to downstream property owners, and, prepetition, ordered Debtor to either stabilize the dam or breach it. Vermont obtained a preliminary injunction in State Court to enforce its order. Debtor and his counsel were served with a copy of the preliminary injunction after the hearing, but Debtor did not respond.

In March 1994, Vermont went back into State Court seeking to find Debtor in contempt for failing to remediate the threat to public safety posed by the dam, and to appoint a master to control the property and comply with the injunction. The Court appointed the master and determined that Debtor would be liable for all expenses incurred by the master and Vermont to carry out the injunction. Work on the dam took place in the spring and summer of 1994 through the fall of 1995. In July 1995, when Vermont could account for its expenses, it sought a prejudgement attachment on Debtor's land to cover its expenses and any civil penalties imposed on Debtor. Vermont perfected the attachment on September 6, 1995.

On December 4, 1995, eighty-nine days after the attachment was perfected, Debtor filed his Chapter 13 petition. One year later, Debtor filed his plan. Vermont objected to

---

sions of law under Fed.R.Civ.P. Rule 52, as made applicable by Fed.R.Bkrtcy.P. 7052.

**2.** § 106, entitled "Waiver of sovereign immunity," provides:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy

Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for a costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

confirmation, and moved to dismiss the entire bankruptcy proceeding. Vermont has not filed a proof of claim, nor consented in any way to our jurisdiction. On May 2, 1996, Debtor commenced this adversary proceeding against Vermont, seeking to avoid the attachment as a preferential transfer. Vermont moved to dismiss on grounds of sovereign immunity, and contended that § 106's abrogation of its immunity from the judicial power was unconstitutional. The United States intervened to defend the constitutionality of the statute.

## DISCUSSION

The Eleventh Amendment of the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." Although the plain language of the Amendment does not immunize a state from suits in federal court brought by its own citizens, *Seminole* held that state sovereign immunity from the federal judicial power extends to any suit against a state by any person, including its own citizens. *Seminole, supra,* 517 U.S. at 53–54, 116 S.Ct. at 1122. The only exception is the two-pronged abrogation test we must apply here: If Congress "has 'unequivocally expresse[d] its intent to abrogate the immunity' ... 'pursuant to a valid exercise of power,'" then the Eleventh Amendment is not violated. *Id.,* 517 U.S. at 55, 116 S.Ct. at 1123. *Seminole* also teaches us that the only "valid exercise of power" the Supreme Court acknowledges is abrogation rooted in the Fourteenth Amendment. No constitutional text adopted prior to the ratification of the Eleventh Amendment can serve as basis for abrogating the immunity it conferred. However, "the Fourteenth Amendment, adopted well after the adoption of the Eleventh Amendment and the ratification of the Constitution, operated to alter the preexisting balance between state and federal power achieved by Article III and the Eleventh Amendment." *Id.,* 517 U.S. at 66, 116 S.Ct. at 1128.

The parties agree that the Bankruptcy Code, including § 106, was enacted by Congress under its Article 1 Bankruptcy Clause powers "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States." Vermont argues that the plain teaching of *Seminole* is that State sovereign immunity cannot be abrogated by Article I powers, leaving us without jurisdiction to determine Debtor's preference action. The United States argues that we should uphold the constitutionality of § 106 because Congress could have passed it under the Fourteenth Amendment. Debtor argues that Vermont has waived its sovereign immunity by objecting to confirmation and moving to dismiss. We reject Debtor's waiver argument. It would be ludicrous to hold Vermont waived its sovereign immunity by waving it as a defense to jurisdiction in the State's motion to dismiss. It would also violate the spirit of § 106(b), the Code section which covers waiver by governmental units. The only form of waiver mentioned is the act of filing a proof of claim. The waiver of § 106(b) is as narrow as it is limited, covering only matters transactionally related to the proof of claim. This suggests that Congress contemplated that the States could participate in some matters, like contesting confirmation, without waiving immunity as to all other aspects of the case. We are unwilling to hold that only filing of a proof of claim can be a waiver[3]. Nevertheless, the State is too important an actor in too many bankrupt-

---

**3.** The Second Circuit's decision in *Barringer v. Griffes,* 964 F.2d 1278 (2d Cir.1992), suggests another form of waiver that we hope will never be necessary to consider. In that case, the Second Circuit held that Vermont's failure to provide a "plain, speedy and efficient" remedy to new residents contesting the constitutionality of the State's automobile use tax, including in particular its refusal to waive sovereign immunity in the State Courts, justified federal court relief under the Tax Injunction Act, 28 U.S.C. § 1341.

*Id.,* at 1283–84. We hypothesize that § 106 will constitutionally permit us to determine matters subject to sovereign immunity if the State Courts do not, in the first instance, provide a plain, speedy and efficient remedy. We trust that this possibility will never have to be explored, because Vermont's Constitution guarantees its citizens "a certain remedy, ... promptly and without delay; conformably to the laws." Vt. Const. Ch. I, Art. 4.

cies for us to leave it in the ambiguous position of facing an argument that it had waived its immunity to suit by participating in essential aspects of the case. Accordingly, we hold that Vermont does not waive its right to sovereign immunity from the judicial power by participating in confirmation proceedings. We intend to observe a distinction that allows Vermont to participate fully as a member of the body of creditors in bankruptcy, with the additional right to have matters impinging on its sovereign immunity determined in the State Courts. Indeed, today we go somewhat farther than the letter of *Seminole* requires. For the reasons that follow, we hold that the judicial power does extend to all claims to property of debtors and their estates. Nonetheless, the State Courts have concurrent jurisdiction, and both Congress and the Supreme Court have demanded an appropriate respect for the sovereign rights of the States. Accordingly, we will dismiss this suit 30 days after judgment is entered on this Memorandum of Decision, to allow Debtor to re-file his Complaint in the State Court.

■■■■ We agree with Vermont that Congress cannot force states into a federal forum under its Article I Bankruptcy Clause powers. We disagree, however, with Vermont's contention that § 106 purports to do that. In this respect § 106 is quite different from the statute at issue in *Seminole*. The Indian Gaming Regulatory Act, 25 U.S.C.A. § 2701 *et seq.*, was a Congressional attempt "to provide a statutory basis for the operation and regulation of gaming by Indian tribes." *Seminole, supra,* 517 U.S. at 48, 116 S.Ct. at 1119. The Act, passed under the Indian Commerce Clause, U.S. Const. Art. I, § 8, cl. 3, imposed upon the States an obligation to "negotiate with the Indian tribe in good faith" on the terms of "a Tribal–State compact governing the conduct of gaming activities." 25 U.S.C.A. § 2710(d)(3)(A). The Act "vest[ed] jurisdiction in '[t]he United States district courts … over any cause of action arising from the failure of a State to enter into negotiations … or to conduct such negotiations in good faith.'" *Seminole, supra,* 517 U.S. at 57, 116 S.Ct. at 1124, *quoting* 25 U.S.C.A. § 2710(d)(7)(A)(i).

The Supreme Court found "it indubitable that Congress intended through the Act to abrogate the States' sovereign immunity from suit" in federal court. *Seminole, supra,* 517 U.S. at 57, 116 S.Ct. at 1124. This finding satisfied the "unequivocally expressed intent" prong of the abrogation test. The Act was unconstitutional, however, because it violated the "valid exercise of power" prong.

> [T]he background principle of state sovereign immunity embodied in the Eleventh Amendment is not so ephemeral as to dissipate when the subject of the suit is an area, like the regulation of Indian commerce, that is under the exclusive control of the Federal Government. Even when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

*Id.,* 517 U.S. at 72–73, 116 S.Ct. at 1131–32.

Congressional power to "establish … uniform Laws on the subject of Bankruptcies throughout the United States," like its authority under the Indian Commerce Clause, arises from Article I, § 8 of the Constitution. Thus, it is not surprising that the applicability of *Seminole* to bankruptcy was specifically addressed in the sniping between the majority and the dissent. Justice Stevens' dissent complained that the majority's holding "prevents Congress from providing a federal forum for a broad range of actions against States," including "those concerning bankruptcy," *id.,* 517 U.S. at 77, 116 S.Ct. at 1134. Chief Justice Rehnquist, for the majority, responded that Justice Stevens' "conclu[sion] that there is 'no remedy' for state violations" of the Bankruptcy Code "is exaggerated both in its substance and in its significance."

First, Justice STEVENS' statement is misleadingly overbroad. [S]everal avenues remain open for ensuring state compliance with federal law. Second, contrary to the implications of Justice STEVENS' conclusion, it has not been widely thought that

the ... bankruptcy ... statutes abrogated the States' sovereign immunity.... Although the ... bankruptcy laws have existed practically since our nation's inception, ... there is no established tradition in the lower federal courts of allowing enforcement of those statutes against the States.

*Id.,* 517 U.S. at 121, 116 S.Ct. at 1132 n. 16.

We must agree with Bankruptcy Judge Samuel L. Bufford's criticism of Justice Rehnquist's second point. "As a factual matter, ... Justice Rehnquist was simply wrong ...: there is a longstanding tradition in the bankruptcy courts of allowing the bankruptcy courts to enforce applicable law against the states." *Schulman v. California State Water Resources Control Board (In re Lazar),* 200 B.R. 358, 376 (Bkrtcy.C.D.Ca.1996). We, like every bankruptcy judge we know, regularly and routinely enforced applicable bankruptcy law against the States prior to *Seminole,* which now makes it clear that we were invading the constitutionally protected sovereignty of the States. We are surprised to discover in this inquiry that bankruptcy judges don't even have the cover that we were carrying out the law as Congress intended. Indeed, it appears that what Congress intended is closer to *Seminole* in spirit.

■■■ Justice Rehnquist's first criticism, however is plainly correct. The Chicken Littles who proclaim that the sky is falling and that *Seminole* is the end of bankruptcy as we know it are wrong. "[S]everal avenues remain open for ensuring state compliance with federal law." *Seminole, supra,* 517 U.S. at 73 n. 16, 116 S.Ct. at 1132 n. 16. Several obvious truths are implicit in that sentence. Contrary to Vermont's assumptions, states are bound by federal law; they must comply with federal law; and federal law can ensure that they do. All three propositions were endorsed by the Supreme Court in *Hilton v. South Carolina Public Railways Commission,* 502 U.S. 197, 204–05, 112 S.Ct. 560, 565, 116 L.Ed.2d 560 (1991). South Carolina owned a railroad. Hilton, one of its employees, sued the state in State Court under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, for money damages for injuries suffered during the course of his employ-

ment. The state trial court "dismissed Hilton's complaint on the grounds that FELA does not authorize an action for money damages against an agency of the State, even if suit is maintained in a state forum," The South Carolina Supreme Court affirmed the dismissal. *Id.,* 502 U.S. at 200, 112 S.Ct. at 562–63. The Supreme Court reversed, holding that FELA "creates a cause of action against a state-owned railroad, enforceable in state court." *Hilton,* 502 U.S. at 199, 112 S.Ct. at 562. When a federal statute "impose[s] liability upon the States, the Supremacy Clause makes that statute the law in every State, fully enforceable in state court." *Id.,* 502 U.S. at 207, 112 S.Ct. at 566.

*Seminole, Hilton,* and this adversary proceeding all involve statutes enacted by Congress pursuant to its Article I powers, being, respectively, the Indian Commerce Clause, the Interstate Commerce Clause, and the Bankruptcy Clause. In each case, the statute in question imposes liability upon the State. The difference between the statutes at issue in *Seminole* and *Hilton* is that the former gave exclusive jurisdiction to the federal courts, 25 U.S .C.A. § 2710(d)(7)(A)(i), while the latter provided that federal jurisdiction "shall be concurrent with that of the courts of the several states." 45 U.S.C.A. § 56. The constitutional significance of that distinction is that, as the Supreme Court "ha[s] stated on many occasions, 'the Eleventh Amendment does not apply in state courts.' " *Hilton, supra,* 502 U.S. at 204–05, 112 S.Ct. at 565.

Jurisdiction under § 106, as under FELA, is concurrent with the state courts, not exclusive to the federal courts as under the Indian Gaming Regulatory Act. The abrogation of sovereign immunity prescribed by § 106(a) is expressly limited and qualified: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit *to the extent set forth in this section* ... " Emphasis added. A close examination of the limiting provisions of § 106(a) persuades us that the statute, by its literal terms, does not violate the Eleventh Amendment. Section 106(a)(2) authorizes "[t]he court" to "hear and determine any issue arising with respect to the application

of" the sections enumerated in § 106(a)(1) "to governmental units."

The parties unquestioningly assume that "[t]he court" means a federal court subject to the Eleventh Amendment. In fact, however, 28 U.S.C. § 1334(b) plainly provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Even more telling, 28 U.S.C. § 1334(c) explicitly notes that the federal court, "in the interest of justice, or in the interest of comity with State courts or respect for State law," may abstain from hearing "a particular proceeding arising under title 11 or arising in or related to a case under title 11." Congress plainly intended that "[t]he Court" referred to in § 106(a)(2) may be a state court.[4] Finally, the plain language of § 106(a) expressly disavows any intention to "create any substantive claim for relief or cause of action not otherwise existing under . . . nonbankruptcy law," and specifically requires that "enforcement . . . against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit. . . ." The Eleventh Amendment is, obviously, "nonbankruptcy law applicable to such governmental unit." Section 106 is not unconstitutional, because the relevant jurisdictional statutes permit bankruptcy causes of action to be enforced against the states in state courts. The Supremacy Clause ensures that federal law will be enforced in a forum where the Eleventh Amendment does not apply. Accordingly, all the parties are wrong; even if sovereign immunity applied to this adversary proceeding, Debtor would still get his day in court, but it would be State Court.

Sovereign immunity, however does not apply to this preference action, which is distinguishable from both *Seminole* and *Hilton* in one fundamental and constitutionally significant way. The statutes involved in the two latter cases both required *in personam* jurisdiction over the State to determine the matters at issue. Here, we do not need jurisdiction over Vermont in order to determine this preference action. While the federal district court has concurrent jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11," 28 U.S.C.A. § 1334(b), it has "exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C.A. § 1334(e). Our *in rem* jurisdiction over property of the debtor and the estate empowers us

> to determine[] all claims that anyone, whether named in the action or not, has to the property or thing in question. The proceeding is one "against the world." The practical effect of such an action is to establish an unquestionable title to the property because no one can later claim exemption from the effect of the judgment on the ground that the court lacked jurisdiction.

16 *Moore's Federal Practice,* 108–106 (Matthew Bender 3d ed.). In this case, due process has been afforded because Vermont has been "informed that the matter is pending and can choose for [it]self whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The Eleventh Amendment is not violated, because Vermont cannot be compelled to appear and defend. It can choose to stay home. In such a case, "no personal liability . . . can be created against the absent [State]; the power of the court being limited to the disposition of the property, which is alone within its jurisdiction." *Freeman v. Alderson,* 119 U.S. 185, 189, 7 S.Ct. 165, 168, 30 L.Ed. 372 (1886). The fact that Vermont "finds these choices unattractive does not convert the choice into an involuntary decision: if this were so, many of the choices that people make in many different contexts would be 'involuntary', and some people could live virtually their entire lives without making any voluntary choices at all." *Lazar, supra,* 200 B.R. at 380. Like Judge Bufford,

---

**4.** Section 1334(c) explicitly authorizes us to defer to the State Courts on this matter. Implicitly, it instructs us to afford Vermont's sovereignty more respect than we have in the past. Accordingly, the State can expect that similar requests for abstention or remand to the State Courts in similar matters will get similar results.

we "decline[] to adopt such a cramped view of the voluntary character of human choices." *Id.*

The First Circuit specifically addressed the issue of unpalatable alternatives a State faces when deciding whether to participate in a bankruptcy proceeding or exercise its sovereign right to stay home:

> [W]e reject the supposition, implicit in [the State's] argument, that a waiver of a constitutional right lacks validity simply because it is the outcome of a "no-win" situation. A decision to forego a constitutional protection is often difficult: the Constitution safeguards important rights. While an effective waiver must be "knowing and intelligent," it may occur even when the waiving party is between a rock and a hard place. . . .

*WJM, Inc. v. Massachusetts Dept. Of Public Welfare*, 840 F.2d 996, 1002–03 (1st Cir.1988).

Given the nature of our holding, we believe that the United States' Fourteenth Amendment arguments are premature and somewhat off target. We do, however, feel obliged to comment on one egregious misapprehension shared by Vermont and the United States. Both assume that the sovereign immunity question is outcome determinative.[5] The United States warns, "The position asserted here by the State would leave the Bankruptcy Court powerless to halt depredations of the estate by state governments in violation of the automatic stay, the turnover provisions, or any of the other mechanisms established by Congress to protect the prop-

erty of the estate." U.S. Memorandum of Law, 16. Vermont's briefing and argument makes it ineluctably clear that the State in fact intends and desires to act against Debtor's estate at its earliest opportunity. As already noted, 28 U.S.C. § 1334(b) gives the State Courts concurrent jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." We also wish to point out, however, that the Fourteenth Amendment, which trumps the Eleventh, emphatically requires that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States," and empowers Congress "to enforce, by appropriate legislation," compliance with that edict.

Congress has already acted. Any attempt by Vermont officials to avoid or evade the privileges and immunities conferred by Congress on debtors and their other creditors would be a crime, 18 U.S.C.A. § 242,[6] and would give rise to a civil remedy, 42 U.S.C. § 1983,[7] and the "judicial power" incontestably covers both.[8]

## CONCLUSION

Section 106(a) does not unconstitutionally compel Vermont to submit to the jurisdiction of a federal forum. Rather, it requires, when personal jurisdiction over the State is necessary to determine the issues, that we defer to the State's election not to have its rights adjudicated in a federal forum. In the present case, Debtor seeks a determination as to rights in prop-

---

5. The procedural posture of this case makes it unnecessary for us to get to the underlying merits. We feel obliged to point out, however, that while there may well be occasions when, as Dickens observed in *Oliver Twist*, "the law is a[n] ass, a[n] idiot," it is far more often the case that it merely looks like one to the uninformed. Vermont is entitled by the Eleventh Amendment to a State Court forum. How well it fares in whatever forum it chooses, however, ultimately depends upon developing or acquiring expertise in the applicable law.

6. 18 U.S.C.A. § 242 provides, in pertinent part:

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured

or protected by the Constitution or laws of the United States . . . shall be fined under this title or imprisoned not more than one year, or both. . . .

7. 42 U.S.C.A. § 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action a law, suit, in equity, or other proper proceeding for redress. . . .

8. We presume, without so holding, that bankruptcy courts would have jurisdiction over § 1983 causes of action arising under title 11, or arising in or related to cases under title 11.

erty over which we have exclusive jurisdiction. Personal jurisdiction over the State is not required to decide the issues raised. Accordingly, the Eleventh Amendment is not violated. Nevertheless, we will exercise our discretion to allow the State to litigate the matter in the State Courts, which have concurrent jurisdiction to determine the issues. Accordingly, Vermont's motion to dismiss the adversary proceeding will be granted. Dismissal will be effective 30 days after entry of an order implementing this Memorandum of Decision, to give Debtor the opportunity to bring this proceeding in State Court. Vermont is to settle an order consistent with this Memorandum of Decision on five days' notice.