**In re 360NETWORKS (USA) INC., et al., Debtors.**

The Official Committee of Unsecured Creditors of 360networks (USA) Inc., et. al., and 360networks (USA) Inc., by and Through the Official Committee of Unsecured Creditors of 360networks (USA) Inc., et al., Plaintiffs,

v.

The Public Utilities Commission of the State of California, and Michael R. Peevey, Loretta M. Lynch, Carl W. Wood, Geoffrey F. Brown, and Susan P. Kennedy in their official capacities as Commissioners of the Public Utilities Commission of the State of California, and not as individuals, Defendants.

Bankruptcy No. 01–13721(ALG).

Adversary No. 03–04316(ALG).

United States Bankruptcy Court, S.D. New York.

Nov. 10, 2004.

(USA) Inc. and its affiliated debtors, on behalf of itself and the debtors (collectively, "Debtors"), commenced this adversary proceeding pursuant to §§ 547 and 550 of the Bankruptcy Code seeking the avoidance as a preference of fees paid to the Public Utilities Commission of the State of California (the "CPUC") for the creation of an environmental impact report.

The CPUC, in turn, filed this motion pursuant to Rule 7012(a)(1) of the Federal Rules of Bankruptcy Procedure, which incorporates Fed.R.Civ.P. 12(b)(1), to dismiss the adversary proceeding on the ground that the Eleventh Amendment divests the Court of jurisdiction to hear the case. The Court suspended proceedings in the matter pending the Supreme Court's decision in *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004). In light of that decision, the Court holds that it has *in rem* jurisdiction to determine whether the payments to the CPUC were preferences, that the exercise of that jurisdiction would not affront the sovereignty of the State, and that there is a reasonable likelihood that the Court can grant effective relief that would be within the scope of its *in rem* jurisdiction. Accordingly, the CPUC motion to dismiss will be denied at this time.

### Background

The Debtors were a provider of telecommunications services in North America whose business contemplated the construction of a continent-wide fiber optic cable network. In March of 2000, one of the Debtors applied to the CPUC for a certificate of public convenience and necessity in order to construct a fiber optic network in California.

The California Environmental Quality Act of 1970, Cal. Pub. Resources Code

Dreier LLP, By Norman N. Kinel, Joel A. Chernov, Emma E. Harzem, New York, for the Plaintiffs/Debtors.

Ida M. Passamonti, Principal Counsel, California Public Utilities Commission, Lionel B. Wilson, Arocles Aquilar, Geoffrey Deyvynsyde, Of Counsel, San Francisco, CA, for the Defendants.

### MEMORANDUM OF DECISION

ALLAN L. GROPPER, Bankruptcy Judge.

On June 18, 2003, the Official Committee of Unsecured Creditors of 360networks

§§ 21000 *et seq.*, requires the applicant to complete an environmental report (the "Report") as a prerequisite to laying fiber optic cable. The CPUC, an "arm" of the state and a governmental unit as defined in § 101(27) of the Bankruptcy Code, is authorized to contract with a third party for the preparation of the Report and to pass those costs along to the applicant. The applicant in turn is required to make installment payments to the CPUC until the entire cost of the Report has been repaid. Cal. Pub. Resources Code § 21165; Cal.Code of Regs. Title 20 § 17.1(j).[1]

The CPUC oversaw the preparation of the Debtors' Report and, upon its completion, sent invoices to the Debtors, as to be reimbursed for the costs of the Report. Between April 6, 2001 and June 8, 2001, the Debtors allegedly made installment payments, in the aggregate sum of $354,604.82, to the CPUC on the account of the Report. As further discussed below, the record does not show how much of the alleged preference, if any, was retained by the CPUC and how much was paid over to the author of the Report.

On June 28, 2001, in the wake of the collapse of the telecommunications industry, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The CPUC did not file a proof of claim, nor was it directly involved in any other way in the bankruptcy proceedings. However, court files show that two other apparent instrumentalities of the State of California have allowed proofs of claim against the Debtors. On October 1, 2002, the Debtors confirmed their Plan of Reorganization. Section 4.3 of the Plan authorizes the Creditors' Committee to commence avoidance actions on behalf of and in the name and right of the Debtors. Thereafter, the Debtors filed this proceeding against the CPUC, seeking to recover $354,604.82 as an avoidable preference.[2] The CPUC responded with this motion to dismiss for lack of jurisdiction.

### Discussion

The CPUC's principal argument is that the sovereign immunity of the State of California divests this Court of jurisdiction to hear this adversary proceeding regardless of the relief requested. The CPUC further argues that § 106(a) of the Bankruptcy Code, which abrogates sovereign immunity with respect to adversary proceedings asserting a debtor's avoidance powers, is unconstitutional because it was not enacted pursuant to a valid grant of congressional power.[3] See *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (holding that the States' sovereign immunity can only be abrogated by an express statement by Congress made pursuant to a valid grant of congressional power). The CPUC further points out that it has not filed a proof of claim and therefore has not waived its sovereign immunity. See 11 U.S.C. § 106(c). The Debtors' principal argument is that the States ceded their sovereign immunity in bankruptcy cases as part of the "plan of the Constitutional convention" and that the Court has jurisdiction to grant all of the relief sought in the complaint, including a money judgment against the CPUC.

---

1. In the words of the Commission, "the Commission recoups the payments in installments . . . ." Points & Authorities, p. 3.

2. The Committee has also filed at least 150 additional preference suits.

3. Section 106(a) of the Bankruptcy Code states in pertinent part: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit . . . with respect to [sections] 547 [and] 550."

The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States ...." U.S. Const. amend. XI, § 1. A State's sovereign immunity, however, is not limited to the terms of the Eleventh Amendment; the Supreme Court has held that the Eleventh Amendment is meant to "restore the original constitutional design" and preserve the founders' concept of States' immunity. *Alden v. Maine,* 527 U.S. 706, 722, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). A State can consent to suit or Congress can abrogate sovereign immunity only by an express statement made pursuant to a valid grant of congressional power. See *Seminole Tribe,* 517 U.S. at 54–55, 116 S.Ct. 1114. In § 106(a) of the Bankruptcy Code, Congress expressly abrogated States' sovereign immunity and made that express statement. As the parties have briefed the issues, the question is whether § 106(a) was enacted pursuant to a valid grant of constitutional power.

There are conflicting decisions as to the interaction between the Eleventh Amendment and Congress's power to abrogate sovereign immunity through the bankruptcy clause of the U.S. Constitution.[4] Prior to *Hood,* there was a split of authority as to the constitutionality of § 106(a), with most of the circuits finding the abrogation "constitutionally infirm." See *Ossen v. Dep't of Social Servs. (In re Charter Oak Assocs.),* 361 F.3d 760, 766 (2d Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 408, —— L.Ed.2d —— (2004); compare, *Nelson v. La Crosse County Dist. Attorney,* 301 F.3d 820, 832 (7th Cir.2002); *Mitchell v. Franchise Tax Bd. (In re Mitchell),* 209 F.3d 1111, 1121 (9th Cir.2000); *Sacred*

*Heart Hosp. v. Pennsylvania (In re Sacred Heart Hosp.),* 133 F.3d 237, 245 (3d Cir.1998); *Dep't of Trans. & Dev. v. PNL Asset Mgmt. Co. (In re Estate of Fernandez),* 130 F.3d 1138, 1139 (5th Cir.1997); *Schlossberg v. Maryland (In re Creative Goldsmiths),* 119 F.3d 1140, 1145 (4th Cir. 1997), with *Hood v. Tenn. Student Assistance Corp. (In re Hood),* 319 F.3d 755, 767–68 (6th Cir.2003), *aff'd on other grounds, Tenn. Student Assistance Corp. v. Hood,* 124 S.Ct. at 1905. The Second Circuit has never determined the constitutionality of § 106(a) and left the issue open in *Charter Oak Assocs.,* 361 F.3d at 766— as did the Supreme Court in *Hood.* In light of the *Hood* decision, it is also unnecessary at this point for this Court to reach the issue. *Hood* nevertheless provides, at this time, the touchstone against which this Court's jurisdiction must initially be measured, and prior authority reconsidered.

**The Supreme Court's Decision in *Hood***

In *Hood,* the debtor commenced an adversary proceeding against a State instrumentality to determine the dischargeability of a student loan. *Hood,* 124 S.Ct. at 1908–09. The State agency holding the debt moved for dismissal, asserting that the Eleventh Amendment prevented the bankruptcy court from hearing the suit. *Id.,* 124 S.Ct. at 1909. The bankruptcy court held that § 106 of the Bankruptcy Code expressly abrogated sovereign immunity and that Congress could abrogate the States' sovereign immunity pursuant to the bankruptcy clause of the Constitution. *Id.,* 124 S.Ct. at 1908–09. The Bankruptcy Appellate Panel and the Sixth Circuit affirmed. *Hood,* 319 F.3d at 758–59. As noted above, the Supreme Court never reached this question; it held, instead, that

---

**4.** The bankruptcy clause provides: "The Congress shall have Power ... To establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. Art I. § 8 cl. 4.

the bankruptcy court's exclusive *in rem* jurisdiction over the property of the debtor "allows it to adjudicate the debtor's [claim] without *in personam* jurisdiction over the State." *Hood,* 124 S.Ct. at 1914.

The fundamental basis for the decision in *Hood* is that a bankruptcy court's discharge of a debt to a State instrumentality constitutes the exercise of *in rem* jurisdiction that does not affront State sovereignty:

> We find no authority, *in fine,* that suggests a bankruptcy court's exercise of its *in rem* jurisdiction to discharge a student loan debt would infringe state sovereignty in the manner suggested by [the State agency]. We thus hold that the undue hardship determination sought by [the debtor] is not a suit against a State for purposes of the Eleventh Amendment.

124 S.Ct. at 1912–13 (footnote omitted). The Court found that the bankruptcy court's exercise of *in rem* jurisdiction was consistent with its prior decisions, which "endorsed individualized determinations of States' interests within the federal courts' *in rem* jurisdiction." 124 S.Ct. at 1912. It cited with approval *Van Huffel v. Harkelrode,* 284 U.S. 225, 228–229, 52 S.Ct. 115, 76 L.Ed. 256 (1931), where it held that the bankruptcy court had the authority to sell the debtor's property "free and clear" of a State's lien; and *Gardner v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947), sustaining jurisdiction to allow or disallow a State tax claim.[5] The Court stated: "At least when the bankruptcy court's jurisdiction over the res is unquestioned, our cases indicate that the exercise of its *in rem* jurisdiction to discharge a debt does not infringe state sovereignty."

124 S.Ct. at 1911 (footnote and citation omitted).

The Court in *Hood* held fast to its conclusion notwithstanding the fact that it was necessary for the debtor in that case to serve a summons and complaint against the State agency. It found that the procedural requirements of a dischargeability action were not determinative, holding, "We see no reason why the service of a summons, which in this case is indistinguishable in practical effect from a motion, should be given dispositive weight." 124 S.Ct. at 1914. It concluded: "Clearly dismissal of the complaint is not appropriate as the court has *in rem* jurisdiction over the matter and the court here has not attempted to adjudicate any claims outside of that jurisdiction." *Id.,* 124 S.Ct. at 1914.

As discussed hereafter, the foregoing language can be cited in support of sustaining jurisdiction in this case. There is, however equally strong language that would militate against sustaining jurisdiction. After the quote in the preceding paragraph, the Court went on to say: "The case before us is thus unlike an adversary proceeding . . . seeking to recover property in the hands of the State on the grounds that the transfer was a voidable preference." *Id.* In a footnote, the Court noted: "This is not to say, 'a bankruptcy court's *in rem* jurisdiction overrides sovereign immunity . . . .' Nor do we hold that every exercise of a bankruptcy court's *in rem* jurisdiction will not offend the sovereignty of the State. No such concerns are present here, and we do not address them." *Id.,* 124 S.Ct. at 1913, n. 5, quoting *United States v. Nordic Village, Inc.,* 503 U.S. 30, 38, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

---

**5.** It also cited *California v. Deep Sea Research,* 523 U.S. 491, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998), finding *in rem* admiralty jurisdiction to determine rights to a vessel in which the State claimed an interest but did not possess.

Taking full account of these observations, the determination whether this Court's jurisdiction can properly be sustained within the scope of the *Hood* holding and rationale rests on answers to the following two questions: first, does this Court have *in rem* jurisdiction in a preference action and can it grant effective relief within the scope of that jurisdiction; and second, would the Court's exercise of its jurisdiction offend a State's sovereignty? The Court will now turn to these questions.

## Does the Bankruptcy Court Have Jurisdiction Over the Res in a Preference Action?

■■■ A court's *in rem* jurisdiction allows it to "determin[e] all claims that anyone ... has to the property or thing in question. The proceeding is 'one against the world.'" *Hood*, 124 S.Ct. at 1911, citing and quoting 16 J. Moore *et al.*, *Moore's Federal Practice* § 108.70[1] (3d ed.2004) (footnotes omitted). *In rem* actions "establish an unquestionable title to" the res. 16 *Moore's Federal Practice* § 108.70[1]. A party with an interest in the res cannot be compelled to participate in an *in rem* proceeding. Where a party in interest chooses not to appear, "no personal liability [can] be created against the absent or non-resident defendant; the power of the court being limited ... to the disposition of the property ...." *Freeman v. Alderson*, 119 U.S. 185, 189, 7 S.Ct. 165, 30 L.Ed. 372 (1886), cited in *Hood*, 124 S.Ct. at 1911. As the Court stated in *Hood*, "[a] bankruptcy court is able to provide the debtor a fresh start ... despite the lack of participation of all his creditors, because the court's jurisdiction is premised on the debtor and his estate,

and not on the creditors." 124 S.Ct. at 1910.

■■■ A bankruptcy court has jurisdiction over a preference suit because it has jurisdiction over the property of the debtor. Congress granted the Federal courts "exclusive jurisdiction of all of the property, wherever located, *of the debtor* as of the commencement of [the] case, and of property of the estate." 28 U.S.C. § 1334(e) (emphasis supplied). The Supreme Court has held that "'property of the debtor' subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy." *Begier v. Internal Revenue Service*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990); see also, *In re Bullion Reserve of North America*, 836 F.2d 1214, 1217 (9th Cir.1988), *cert. denied*, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988) ("[P]roperty belongs to the debtor for purposes of § 547 if its transfer will deprive the bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors."). Thus, property transferred by virtue of an avoidable preference is "property of the debtor" and within Congress' grant of exclusive jurisdiction to the Federal courts in 28 U.S.C. § 1334(e).[6]

■■■ Because a court's jurisdiction over preferential transfers arises from its exclusive jurisdiction over the property of the debtor, such actions are within *in rem* jurisdiction of the court. See, *Whitlock v. Worrall (In re American Aluminum Window Corp.)*, 15 B.R. 803, 805 (Bankr. D.Mass.1981) (holding that a preference action requires "*in rem* jurisdiction over the property of the estate and not neces-

---

**6.** In a preference action, property transferred does not become property of the estate until it is recovered. *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir.1992), quoting and citing *In re Saunders*, 101 B.R. 303, 304–06 (Bankr.N.D.Fla.1989).

sarily an *in personam* jurisdiction over the Defendant")[7]; *O'Brien v. State of Vermont (In re O'Brien)*, 216 B.R. 731, 737 (Bankr.D.Vt.1998) (holding prior to *Hood* that the bankruptcy courts have *in rem* jurisdiction to decide preference suits). To the extent the Court has *in rem* jurisdiction over the property of the debtor, it has *in rem* jurisdiction to decide issues involving that property, notwithstanding a State's sovereign immunity. A bankruptcy court's *in rem* jurisdiction over a debtor's property "is not limited to the prevention of interference with the use of [the debtor's] property ... but it 'extends also to the adjudication of questions respecting title.'" *Gardner v. State of New Jersey*, 329 U.S. 565, 577, 67 S.Ct. 467, 91 L.Ed. 504 (1947), quoting *Ex parte Baldwin*, 291 U.S. 610, 616, 54 S.Ct. 551, 78 L.Ed. 1020 (1934).

■ A finding that the Court's jurisdiction over a preference action is presumptively *in rem* does not end the analysis. In *Hood*, the Supreme Court rejected the notion that every exercise of a bankruptcy court's *in rem* jurisdiction was consistent with principles of sovereign immunity.[8] The Court also stressed in *Hood* that the bankruptcy court there had unquestioned jurisdiction over the res, 124 S. Ct at 1910, and it relied on *Deep Sea Research*, involving the Federal courts' *in rem* admiralty jurisdiction, where the State did not have possession of the res and the Supreme

Court unanimously rejected the claim of sovereign immunity. 523 U.S. at 507–08, 118 S.Ct. 1464. The question here is not only whether the court has theoretical *in rem* jurisdiction, but whether the debtor (or a third party) has effective possession of the res and whether *in personam* jurisdiction is necessary in order for the court to grant relief. For the following reasons, it appears that the Court's jurisdiction over the property of the debtor is sufficient to grant this plaintiff effective relief without the exercise of *in personam* jurisdiction.

■ The Bankruptcy Code "separat[es] the concepts of avoiding a transfer and recovering from the transferee." S.Rep. No. 989, 95th Cong., 2d Sess. 90 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5876.[9] Section 547 of the Bankruptcy Code sets forth the elements that must be established in order to deem a preferential transfer avoided. A separate section, § 550, allows the trustee (or debtor in possession) to recover property only *after* the trustee has successfully invoked the § 547 avoidance powers. Moreover, the trustee is not required to seek an affirmative remedy: "the language of § 550, stating that the 'trustee *may* recover' property following avoidance, 11 U.S.C. § 550 (emphasis added), is permissive rather than mandatory (the trustee 'must' recover) or descriptive (the trustee 'thereby' recov-

7. Authority subsequent to this decision would indicate that it is jurisdiction over property of the debtor, rather than property of the estate, that is at issue in a preference action.

8. The Court cited its decision in *Nordic Village*, where it rejected the notion that the jurisdictional grant in § 1334 could override all defenses to a plaintiff's claim. 503 U.S. at 38, 112 S.Ct. 1011.

9. Congress enacted a similar scheme in the former Bankruptcy Act. Section 60(a) of the

Bankruptcy Act, 11 U.S.C. § 96 (repealed), provided the definition of a preferential transfer. Section 60(b) and Rule 611, the enforcement provisions, granted the trustee the power to recover property transferred in an avoidable transaction. 3 *Collier on Bankruptcy*, 757 (14th ed.1977). If the trustee was unable to satisfy the definition of a preference in section 60(a), he would not proceed to the enforcement provisions of section 60(b). *Id.* at 756–57.

ers)." *Suhar v. Burns (In re Burns),* 322 F.3d 421, 428 (6th Cir.2003).

■ A determination under § 547 that a transfer of property is avoidable is not tantamount to a money judgment, injunctive relief, or any specific remedy at all, and the Court's power to determine whether a transfer is avoidable as a preference is not dependant on its power to order an affirmative remedy pursuant to § 550. As the court stated in *In re Burns,* "the fact that avoidance and recovery are distinct does not mean that avoidance cannot trigger recovery, but it does suggest that avoidance need not always trigger recovery." 322 F.3d at 427. In *In re McLean Industries, Inc.,* 196 B.R. 670 (S.D.N.Y. 1996), an action for affirmative relief under §§ 547 and 550 was time-barred by virtue of § 546(a)(1).[10] Nevertheless, the District Court held that the elements of an avoidable preference are contained exclusively in § 547; the fact that the bankruptcy court could not order affirmative relief did not impact the court's power to determine that a transfer was avoidable. In that case the court could still grant partial relief under § 502(d), which requires the court to "disallow any claim of any entity ... that is a transferee of a transfer avoidable under section ... 547 ...." 11 U.S.C. § 502(d). *McLean Industries,* 196 B.R. at 677, quoting *In re KF Dairies, Inc.,* 143 B.R. 734, 737 (9th Cir. BAP 1992) (the Bankruptcy Code "does not sanction a choice between the equal distribution an action would provide and the less unequal distribution an objection would provide. When both are available to remedy an avoidable transfer, an action yielding affirmative relief should be pursued. If an action is time-barred, an objection yielding partial relief should be pursued.").

In this case, exercise of the Court's authority under § 502(d) would represent an exercise of *in rem* jurisdiction consistent with the holding of *Hood.* It would also be squarely within the Second Circuit decision in *Charter Oak,* where the Court held that disallowance of the claim of a State entity by virtue of a counterclaim held by the estate was not barred by the doctrine of sovereign immunity. The Court stated, "fairness and consistency concerns ... favor an approach that would allow a debtor to assert a claim that would reduce or eliminate its indebtedness to the state." 361 F.3d at 769, citing and quoting *Lapides v. Bd. of Regents,* 535 U.S. 613, 620, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).[11]

In the matter at bar, the Debtors' complaint includes a demand for a sum of money from the CPUC, relief that would seemingly require the exercise of *in personam* jurisdiction and arguably extend beyond bankruptcy *in rem* jurisdiction. But the complaint also includes a demand for relief pursuant to § 502(d), relief that the Court could afford within its *in rem* jurisdiction. The CPUC is mistaken when it claims that this demand is a nullity. (Points & Authorities, p. 2.) A review of the Court's claims docket shows that an apparent instrumentality of the State of

---

**10.** Section 546(a) provides: that "[a]n action or proceeding under [§ 547] may not be commenced after the earlier of (1) the later of 2 years after the entry of the order of relief; or (2) one year after the appointment or election of [a trustee]" or "the time the case is closed or dismissed."

**11.** In *Charter Oak* the Second Circuit was discussing the implications and scope of the doctrine that a State waives its sovereign immunity when it files a proof of claim. There is no indication in the record that California filed a proof of claim, and the CPUC has denied that it did so. Nevertheless, the application of § 502(d) to disallow a claim of a California instrumentality would be entirely consistent with the spirit and rationale of *Hood* and *Charter Oak.*

California holds two allowed claims in the aggregate amount of $571,224.[12] For claims allowance and sovereign immunity purposes, all instrumentalities of a State are ordinarily considered a unitary creditor. See *Charter Oak*, 361 F.3d at 771–72; see also *Cherry Cotton Mills v. United States*, 327 U.S. 536, 105 Ct.Cl. 824, 66 S.Ct. 729, 90 L.Ed. 835 (1946); *Doe v. United States (In re Doe)*, 58 F.3d 494, 498 (9th Cir.1995); *HAL, Inc. v. United States (In re Hal, Inc.)*, 122 F.3d 851, 853 (9th Cir.1997). Disallowance of California's claims by virtue of the provisions of § 502(d) might afford the Debtors substantial relief.[13]

Furthermore, the Debtors might, in this case, be entitled to relief against a third party, even if a judgment for money against the State would be impermissible. This is suggested by the fact that the Debtors' funds paid to the CPUC were apparently intended to repay the State for costs incurred in obtaining an environmental study from a third party.[14] It may be that the only appropriate remedy would be to attempt to trace the funds into the hands of a third party.[15] In this respect, it is relevant that § 550 of the Bankruptcy Code provides two distinct mechanisms for the resolution a preference action. First, the trustee may seek the return of the property itself. Second, the Court can order the return of the fair market value of the property. 11 U.S.C. § 550. Because the "Bankruptcy Code does not provide guidance on when the Court should order payment of the value of property rather than order the return of property itself, it is within the Court's discretion to make such a determination." *In re Centennial Textiles, Inc.*, 220 B.R. 165, 177 (Bankr.S.D.N.Y.1998). In any event, at this time, "dismissal of the complaint is not appropriate as the court has *in rem* jurisdiction over the matter, and the court here has not attempted to adjudicate any claims outside of that jurisdiction." *Hood*, 124 S.Ct. at 1914.

### Would This Court's Exercise of Its *In Rem* Jurisdiction Offend a State's Sovereignty?

The second question raised by the *Hood* decision is whether the Court's exercise of its *in rem* jurisdiction would offend a State's sovereignty. In determining whether a bankruptcy proceeding offends the sovereignty of a State, the court must look beyond the "mere names of the titular parties" and focus instead on "the essential nature and effect of the proceed-

---

12. The Court can take judicial notice of its own docket. See Fed.R.Evid. 201 made applicable here through Bankruptcy Rule 9017.

13. Although the claims of California have apparently been allowed, § 502(i) provides that a claim "that has been allowed or disallowed may be reconsidered for cause." Of course, no opinion is expressed on the merits as to whether § 502(d) would be applicable or as to any other matter affecting any third party.

14. The State may also have a complete defense as a conduit of funds paid over to a third party. See *Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 53 (2d Cir.1997) quoting and citing *Hooker Atlanta Corp. v. Hocker*, 155 B.R. 332, 337–338 (Bankr.S.D.N.Y.1993) ("to determine whether the trustee may recover a conveyance, the court must discern whether the entity from whom recovery is sought is the conduit, initial transferee or subsequent, good faith transferee for value without knowledge of the voidability of the transfer."). Again, the Court expresses no opinion on the merits of such a claim and all the defenses of a third party are expressly reserved.

15. In *Nordic Village*, the Supreme Court distinguished its prior decision in *Begier*, finding that *Begier* involved an effort to trace specific funds in accordance with an exercise of its *in rem* jurisdiction that did not breach sovereign immunity. 503 U.S. at 38, 112 S.Ct. 1011.

ing as it appears from the entire record." *Ex parte New York,* 256 U.S. 490, 500, 41 S.Ct. 588, 65 L.Ed. 1057 (1921). A suit offends a State's sovereign immunity where either "the judgment sought would expend itself on the public treasury", or the "effect of the judgment would be to restrain the Government from acting, or compel it to act." *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (quotations omitted); see also *B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 723–24 (2d Cir.1983).

Charging a State with the receipt of a preference carries no implication of wrongdoing on its part. "Preferences to creditors are themselves unobjectionable as long as a collective proceeding is not in the works. Every creditor is 'preferred' when it is paid, but for a creditor to be paid is an ordinary part of commercial life." Baird, *The Elements of Bankruptcy* 165–66 (Rev. ed.1992); see also Jackson, *The Logic and Limit of Bankruptcy* 146 (1986) (distinguishing preferences from fraudulent conveyances). Prior to a bankruptcy filing, "[a] debtor may ordinarily prefer one or more of its creditors, so long as the transfer or payment is to pay or secure a legitimate debt and violates no statute." 5 L. King, *et al., Collier on Bankruptcy,* ¶ 547.01 (15th ed.1979). As the Supreme Court said in *Van Iderstine v. National Discount Co.,* 227 U.S. 575, 33 S.Ct. 343, 57 L.Ed. 652 (1913), an intentional fraudulent transfer "is inherently and always vicious; [a preference] innocent and valid except when made in violation of the express provisions of a statute. One is malum per se and the other malum prohibitum— and then only to the extent that it is forbidden. A fraudulent conveyance is void regardless of its date; a preference is valid unless made within the prohibited period." *National Discount Co.,* 227 U.S. at 582, 33 S.Ct. 343.

Preference actions are designed to promote the dual bankruptcy policies of discouraging creditors from seeking to dismember the debtor during its slide into bankruptcy and facilitating the principle of equality of distribution. *Union Bank v. Wolas,* 502 U.S. 151, 161, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991). As a principal treatise stated with respect to the 1898 Act, "Restoration, not punishment, is the object of this law." 3 James Wm. Moore, Lawrence P. King, *Collier on Bankruptcy,* 307–08 (14th ed.1977). Congress "envisioned the deterrence of the 'race of diligence' as furthering the more important goal of equal sharing of assets among creditors." *Barash v. Public Finance Corp.,* 658 F.2d 504, 510 (7th Cir.1981); see also H.R.Rep. No. 95–595. 95th Cong., 1st Sess. 177–78 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6136–39. Unlike other avoidable transactions, "[a] preference merely violates the bankruptcy rule of equal distribution among creditors." 5 *Collier on Bankruptcy,* ¶ 547.01 (15th ed.1979).

The CPUC cannot point to anything inherently offensive to the States' sovereignty in the underlying policies behind a preference action. This Court similarly cannot find anything inherently offensive about the principle that there should be equality among the many creditors in a bankruptcy and that the critical date for equality purposes should, in some cases, be the date that is 90 days prior to the filing of the petition. The CPUC, instead, argues that an avoidance action necessarily results in a money judgment, and that the Court cannot resolve such an action without exercising *in personam* jurisdiction, thereby coercing the State into a legal proceeding. As discussed above, whether a money judgment would be necessary in order to afford the Debtors effective relief and whether a money judgment would require

the exercise of *in personam* jurisdiction that would be offensive to the State need not be reached at this stage of the case.

▇ In *Hood*, the Court reaffirmed the principle that a State may be bound by a bankruptcy court's exercise of its *in rem* jurisdiction regardless of whether it chooses to participate actively in the bankruptcy. See *Hood*, 124 S.Ct. at 1910; *Gardner v. State of New Jersey*, 329 U.S. at 574, 67 S.Ct. 467 (holding that a State must file a proof of claim to participate in the distribution of the debtor's assets); *New York v. Irving Trust*, 288 U.S. 329, 53 S.Ct. 389, 77 L.Ed. 815 (1933) (holding New York's late-filed tax claim was barred). At this time, the Court need only determine whether the Debtors have satisfied the § 547 elements so as to avoid the pre-petition transfers made to the CPUC. Since jurisdiction here is premised on the res, property of the debtor, the CPUC could choose not to participate in the proceeding or the CPUC or another instrumentality of California could choose to come in and defend. *In re O'Brien*, 216 B.R. at 737; *In re Lazar*, 200 B.R. 358, 380 (Bankr.C.D.Cal.1996); see also *In re Hooker Investments, Inc.*, 937 F.2d 833 (2d Cir.1991). Either way, the Court can hear and determine whether the transfer is avoidable.

▇ Moreover, contrary to the CPUC's argument, the fact that the issues have been raised in an adversary proceeding does not create an inference of coercion. In *Hood*, the Court noted that "[t]he issuance of process [is] normally an indignity to the sovereignty of a State ...." *Hood*, 124 S.Ct. at 1914. However, "[t]o conclude that the issuance of a summons, which is required only by the [Federal Rules of Bankruptcy Procedure] precludes [a party] from exercising her statutory right ... would give the Rules an impermissible effect." *Id.* The Court then went on to hold that because the Bankruptcy Code was silent as to the process by which the debt- or was to petition for the discharge of a student loan, "a debtor could proceed by motion" absent Rule 7001. *Id.* The same reasoning applies here. Section 547 is also silent as to the procedural mechanisms that the trustee should utilize to petition for the avoidance of a transfer. Absent Rule 7001(1), the trustee could invoke § 547 through a motion. Thus, the use of service of process is not dispositive, and for the same reasons as stated in *Hood*, is not an affront to State sovereignty.

### Conclusion

The Court has suggested above certain relief that it might be able to grant in this action that would fall within the four corners of its *in rem* jurisdiction, as construed in the *Hood* decision. This would include a finding that the CPUC received a preference and a disallowance of the claims of other California State instrumentalities. It could include relief that was directed at the party that may arguably have actually received the preference, the firm that preformed the study that the Debtors allegedly paid for during the 90-day period before the petitions were filed.

A court has broad power to determine the scope of its jurisdiction. See, *e.g.*, *United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). It can also take appropriate action to preserve its jurisdiction—for example, by dismissing parties whose presence in the case would otherwise destroy Federal jurisdiction or by adding or deleting claims. See 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1685 (1988); see also *Varley v. Tampax, Inc.*, 855 F.2d 696, 700 (10th Cir.1988); *In re Zywiczynski*, 210 B.R. 924, 933 (Bankr. N.D.N.Y.1997). A court is not bound, in deciding jurisdictional issues, by the plaintiff's prayer for relief; rather it can grant relief within its jurisdiction and excise a demand for a money judgment if necessary. See, *e.g.*, *Metro–North Commuter*

*R.R. v. Buckley,* 521 U.S. 424, 455, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997); *Whitson v. Staff Acquisition, Inc.,* 41 F.Supp.2d 1294, 1296 (D.Al.1999). At the same time, a court should not anticipate a question of constitutional law in advance of the necessity of deciding it. *Hood,* 124 S.Ct. at 1915, quoting *Liverpool, New York & Philadelphia S.S. Co. v. Commissioners of Emigration,* 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885). There is no present need to decide whether the court could exercise *in personam* jurisdiction in this case or whether § 106(a) is constitutional.

Accordingly, the CPUC motion to dismiss is denied, at this time.[16] The Debtors shall settle an appropriate order on 10 days' notice.

---

16. Although the motion to dismiss of the CPUC is denied, the motion was also brought on behalf of its Commissioners, who are also named defendants in their official capacities. These defendants argue convincingly that the complaint seeks retrospective, rather than prospective, relief and that the doctrine of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), does not apply. The Debtors have not responded to this showing in any way and have implicitly waived their right to respond. See *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 526 (2d Cir.1994); *Fisher v. Reich,* 1994 WL 673525, 1994 U.S. Dist. LEXIS 17121, *49–50 (S.D.N.Y.1994). The complaint shall be dismissed against the individuals.